IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

YANDREY CORDOVA PAZ,

    Petitioner,

v.                                    No. 1:26-cv-01836-KG-JMR

MARKWAYNE MULLIN, et al.,

    Respondents.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Yandry Paz's Petition for a Writ of Habeas Corpus, Doc. 1, and the Government's Response, Doc. 6. For the reasons below, the Court grants the petition and orders a bond hearing.

### I.    *Background*

Petitioner is a native and citizen of Cuba who presented at a port of entry on October 9, 2023, under the CBP One program. Doc. 6 at 1. The Department of Homeland Security ("DHS") inspected Petitioner and granted him temporary parole into the United States until October 9, 2025. Doc. 1 at 15. On April 15, 2026, Immigration and Customs Enforcement ("ICE") arrested Petitioner. Doc. 6 at 2. He is currently detained at the Torrance County Detention Center. *Id.* Petitioner requests immediate relief, or in the alternative, "an immediate bond hearing." *Id.* at 7. The Government opposes Petitioner's release and argues that he is subject to mandatory detention. Doc. 6 at 6.

### II.    *Legal Standard*

Federal courts have jurisdiction to review habeas petitions filed by noncitizen detainees alleging "custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *see also Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Fifth

1

Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690.

The Immigration and Nationality Act ("INA") and its implementing regulations outline the appropriate procedures for the detention and removal of noncitizens without legal status in the United States. "Noncitizens who arrive at a port of entry without a visa or other entry documents...are deemed inadmissible under 8 U.S.C. § 1182(a)(7)." *Mendibaev v. Lyons*, 2026 WL 917457, at *3 (D.N.M.) (internal quotation marks and citation omitted). Once a noncitizen is deemed inadmissible, "the immigration officer must order the noncitizen's removal unless the noncitizen indicates an intention to apply for asylum or fear of persecution." *Id.* (citing § 1225(b)(1)(A)(i)). The Government may place the noncitizen into expedited removal proceedings, *see* § 1225(b)(1), or place the noncitizen into regular removal proceedings under § 1229(a). *See id.*

Two provisions of the INA govern the detention of noncitizens pending removal proceedings. *See Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). First, § 1225 governs noncitizens detained at a port of entry or shortly after entry, who are treated as "[noncitizens] seeking admission into the country." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020). Absent exceptions irrelevant here, § 1225 "mandates detention and affords no bond hearing." *Pu Sacvin v. De Anda-Ybarra*, 2025 WL 3187432, at *1 (D.N.M.).

By contrast, § 1226(a) sets forth "the default rule" for detaining noncitizens "already in the country." *Jennings*, 583 U.S. at 303. Section 1226(a) authorizes the arrest and detention of noncitizens, "on a warrant issued by the Attorney General...pending a decision on whether [they

2

are] to be removed."  Under federal regulations, a noncitizen detained under § 1226(a) is entitled to an individualized bond hearing at the "outset of detention."  *Jennings*, 583 U.S. at 306.

Immigration parole is a narrow exception to the otherwise mandatory detention of noncitizens under § 1225(b)(1).  Under § 1182(d)(5)(A), a noncitizen applicant for admission who is ordinarily subject to mandatory detention under § 1225(b)(1) may be paroled into the United States pending the resolution of their immigration proceeding.  The discretionary decision to grant parole rests with the Secretary of Homeland Security, who may parole noncitizens to serve "urgent humanitarian reasons or significant public benefit."  § 1182(d)(5)(A).  "[W]hen the purposes of such parole [], in the opinion of the Secretary of Homeland Security, have been served the [noncitizen] shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States."  *Id.*  Immigration parole terminates automatically if the parolee departs the United States or the authorized parole period expires. 8 C.F.R. § 212.5(e)(1).  Otherwise, termination of parole requires written notice.  § 212.5(e)(2).

### III.    *Analysis*

For the reasons below, the Court concludes that (A) Petitioner is subject to detention under § 1225(b), but (B) the Due Process Clause applies to Petitioner and entitles him to a bond hearing.

### A.    *Petitioner is subject to detention under § 1225(b).*

As an initial matter, Petitioner's redetention was lawful under the INA because his parole was expired.  *See* Doc. 1 at 15.  Under § 212.5(e)(1), parole terminates automatically upon expiration of the authorized period, and no written notice is required.  Here, Petitioner's parole terminated in October 2025, and he was arrested in 2026.  Doc. 6 at 2.  Noncitizens who have not

3

"effected an entry" have "only those rights regarding admission that Congress has provided by statute." *Thuraissigiam*, 591 U.S. at 140. Therefore, under the INA, Petitioner was not entitled to additional procedural safeguards before his arrest.

As a result, Petitioner is subject to detention under § 1225(b). Parole does not constitute an admission into the United States—a parolee remains an applicant for admission even after parole is terminated or revoked. *See* § 1182(d)(5)(A); 8 C.F.R. § 1.2. So, "[a]n alien detained under [§ 1225(b)] who is released from detention pursuant to a grant of parole under [§ 1182(d)(5)(A)], and whose grant of parole is subsequently terminated, is returned to custody under [§ 1225(b)] pending the completion of removal proceedings." *Rincon v. Hyde*, 810 F. Supp. 3d 101, 109 (D. Mass. 2025) (quoting *Matter of Q. Li*, 29 I. & N. Dec. 66, 70 (BIA 2025)). In 2023, Petitioner arrived at a port of entry, presented for admission, and was detained under § 1225(b) before he was granted parole. Doc. 6 at 1. Therefore, when his parole was revoked, Petitioner reverted to his status as an applicant for admission, subject to detention under § 1225(b).

### B.    The Due Process Clause applies.

Next, while Petitioner is subject to detention under § 1225(b), that is not the end of the Court's inquiry. In addition to his statutory claim, Petitioner seemingly asserts that his continued detention violates the Due Process Clause. Doc. 1 at 12. The Court agrees.

Courts analyze due process claims in two steps. First, they evaluate whether a protected liberty interest exists, and second, whether the procedures used to deprive that interest satisfy due process. *Domingo v. Castro*, 2025 WL 2941217, at *3 (D.N.M.) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). The Court addresses each in turn.

       ***1.    Petitioner has a cognizable liberty interest because he has lived here for years.***

It is well-settled that the Due Process Clause grants protection to "all persons within the territory of the United States." *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.  Protection under the Due Process Clause extends to noncitizens "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.  The Supreme Court has recognized that a noncitizen physically present in the United States may acquire a cognizable liberty interest through "substantial connections" here. *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country"); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) (holding that noncitizens have a "weighty" interest in their right "to stay and live and work in this land of freedom" and to "rejoin...immediate family").

Under these principles, Petitioner has established a protectable liberty interest through his time residing in the United States.  That interest became stronger as he developed community ties over time.  His detention has severed those ties and deprived him of the core liberty interest the Due Process Clause protects: freedom from "unlawful or arbitrary physical restraint or detention." *See Zadvydas*, 533 U.S. at 718 (Kennedy, J., dissenting).

       ***2.    Under the Due Process Clause, a bond hearing is warranted.***

Because the Due Process Clause affords Petitioner a liberty interest, the Court next determines what process is due.  In the immigration context, courts often apply the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *See, e.g.*, *Landon*, 459 U.S. at 34;

*Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020); *Hernandez v. Cremer*, 913 F.2d 230, 238 (5th Cir. 1990).  Under *Mathews*, the Court balances (1) "the private interest" affected; (2) "the risk of erroneous deprivation" through the procedures used and the probable value of additional safeguards; and (3) "the Government's interest," including the fiscal and administrative burdens of additional procedures.  424 U.S. at 335.

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after living outside of physical custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects."  *Zadvydas*, 533 U.S. at 690.  As mentioned above, Petitioner was free from physical custody for more than a year before he was redetained, and his interest in his liberty grew stronger as he lived within his community.  His private interest in freedom from arbitrary or unlawful physical custody is substantial.

The second *Mathews* factor also favors Petitioner.  The risk of erroneous deprivation is high because mandatory detention does not adequately protect his interest in freedom from arbitrary physical restraint.  Detention must "bear[ ] a reasonable relation to the purpose[s] for which the individual was committed."  *Id*. at 690–91 (internal quotation marks omitted) (construing 8 U.S.C. § 1231 to avoid the constitutional concerns raised by indefinite detention). Yet § 1225(b) provides no mechanism for determining whether detention is justified in light of Petitioner's individual circumstances.  As the Government points out, Petitioner is subject to mandatory detention under the statute.  *See* Doc. 6 at 6.  Therefore, "the equities tip in favor of a bond hearing, rather than release, where the Petitioner still bears the burden of showing why release on bond is warranted in this case."  *Mendibaev*, 2026 WL 917457, at *7.  This ensures

Petitioner "is not erroneously deprived of his liberty interest in release" while "recognizing that detention is mandated by the statute." *Id.*

Finally, the third *Mathews* factor favors Petitioner.  While the Government has a strong interest in enforcing its immigration laws, its interest in detaining noncitizens absent an individualized justification for doing so is low.  *Id.*  The Government previously determined that Petitioner could pursue his immigration case while at liberty, and it has identified no material change in circumstances that would justify a different conclusion today.  The Court recognizes that providing Petitioner a bond hearing necessarily entails an "administrative burden[]."  *See Mathews*, 424 U.S. at 335.  But "[c]ourts generally have found that the cost of providing a bond hearing is relatively minimal."  *Hilario M.R. v. Warden, Mesa Verde Det. Ctr.*, 2025 WL 1158841, at *9 (E.D. Cal.) (citing cases).  Because Petitioner's removal proceedings will continue regardless of his detention status, a bond hearing does not interfere with the Government's "sovereign prerogative...to decide which [noncitizens] to admit."  *Landon*, 459 U.S. at 32.  Nor does this Order affect the Government's authority to detain Petitioner after a final order of removal issues.  *See* § 1231(a).  In sum, all three *Mathews* factors weigh in favor of Petitioner, and he is therefore entitled to an individualized bond hearing.

### IV.    *Conclusion*

For the reasons above, the Petition for Writ of Habeas Corpus, Doc. 1, is granted.  The Court therefore orders:

1.  Within 14 days of this Order, the Government shall provide Petitioner with an individualized bond hearing before an immigration judge.

2. At the hearing, Petitioner bears the burden of proving by a preponderance of the evidence that conditions of release would adequately address any risk of flight or danger to the community.

3. If a bond hearing is not provided within 14 days, Petitioner shall be released under the same conditions that governed his release immediately prior to detention.

IT IS SO ORDERED.

/s/Kenneth J. Gonzales\
CHIEF UNITED STATES DISTRICT JUDGE

- Please note that this document has been electronically filed. To verify its authenticity, please refer to the Digital File Stamp on the NEF (Notice of Electronic Filing) accompanying this document. Electronically filed documents can be found on the Court's PACER public access system.